UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
                                          :

MICHAEL H. KALINER, as Chapter 7 Trustee for    :
BARRON ATM, LLC
                                            :

               -against-                    :   Civil Action No.
                                           :   07 Civ. 4643 (LMM)

MT. VERNON MONETARY MANAGEMENT CORP.   :
d/b/a MVMM CORP., MT. VERNON MONEY CENTER   :
CORP., d/b/a MVMC CORP. and BARRON ATM CORP.   :
                                           :

                       Defendants.        :
                                           :
-------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Submitted by:

SNOW BECKER KRAUSS P.C.
Derek Wolman  (9720)
Attorneys for Plaintiff
Michael H. Kaliner, Esq., as Chapter 7
Trustee for BARRON ATM, LLC
605 Third Avenue
New York, New York 10158
(212) 687-3860

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

FACTS ...................................................................................................................... 2

PRELIMINARY STATEMENT ................................................................................. 3

ARGUMENT ............................................................................................................. 5

   POINT I .................................................................................................................. 5

     THIS COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIM FOR BREACH
     OF CONTRACT ................................................................................................... 5

   POINT II ................................................................................................................. 8

     THE PLAINTIFF'S CLAIMS FOR QUANTUM MERUIT AND UNJUST
     ENRICHMENT ARE PROPERLY ASSERTED ................................................ 8

   POINT III ............................................................................................................... 10

     THE CLAIM FOR FRAUD SHOULD NOT BE DISMISSED ........................... 10

     A.   Plaintiff has sufficiently pled a cause of action for fraud ............................ 10

       1.   Plaintiff's sufficiently alleged that Defendants made a material
       misrepresentation .................................................................................... 10

       2.   Defendants MVMM, MVMC, and Barron Corp. intended to defraud
       Barron LLC ............................................................................................ 12

       3.   Barron LLC reasonably relied on Defendants representations that it would
       honor the Contract ................................................................................. 13

       4.   Barron LLC was damaged by Defendants' fraud ................................... 14

     B.   Plaintiff may plead its fraud claim against the Defendants
     in the alternative ........................................................................................... 15

CONCLUSION ........................................................................................................ 17

TABLE OF AUTHORITIES

**Cases**

511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153,  746 N.Y.s.2d
    131, 136 (2002)..................................................................................................16

Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d Cir. 1985).......................................5

Banque Arabe Et Internationale D'Investissement, 57 F.3d 146 (2nd Cir. 1995)..............16

Campo v. 1st Nationwide Bank, 857 F.Supp. 264, 271-72 (E.D.N.Y. 1994) ......................6

Crabtree v. Tristar Automotive Group, Inc., 776 F.Supp. 155, 156 (S.D.N.Y. 1991) ........6

Deerfield Communications Corporation v. Chesbrough-Ponds, Inc.,
    68 N.Y.2d 954, 956, 510 N.Y.S.2d 88 (1986).........................................................12, 19

Dunkin' Donuts, Inc. v. HWT Associates, Inc., 181 A.D.2d 711, 581 N.Y.S.2d 363 (2nd
    Dept 1992)...................................................................................................13

Fisher v. A.W. Miller Techincal Sales, Inc., 306 A.D.2d 829, 834, 762 N.Y.S.2d 205, 209
    (4th Dept. 2003).............................................................................................10

G-I Holdings, Inc. v. Baron & Budd, 238 F.Supp2d 521, 536-37 (S.D.N.Y. 2002).........18

Global Entertainment, Inc. v. New York Telephone Company, 2000 WL 1672327
    (S.D.N.Y. 2000)................................................................................................5

Houbigant, Inc. v. Deloitte & Touche LLP, 303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499
    (1st Dept. 2003).............................................................................................14

IIG Capital LLC v. Archipelago, LLC, 36 A.D.3d 401, 405, 829 N.Y.S.2d 10, 14 (1st
    Dept. 2007) ................................................................................................10

Inc. v. The CIT Group Equipment Financing, Inc., 157 F.3d 956, 964 (2nd Cir. 1997)
    (citing  U.S. East Telecommunications, Inc. v. U.S. West Communications Services,
    Inc., 38 F.3d 1289, 1296 (2d. Cir. 1994) ...............................................................9

International Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1255-56
    (S.D.N.Y. 1995)..............................................................................................5

Joseph Sternberg, Inc. v. Walber 36th Street Associates, 187 A.D.2d 225, 228, 594
    N.Y.S.2d 144, 146 (1st Dept. 1993) ..................................................................10

Liu v. Beth Israel Medical Center, 2003 WL 21488081 (S.D.N.Y. 2003)......................10

Rastogi v. Beth Israel Med. Ctr., 97 Civ. 9537 LAP; 1999 U.S. Dist. LEXIS 12284
(S.D.N.Y. 1999)...................................................................................................5

Revak v. SEC Realty Corp., 18. F.3d 81, 90 (2nd Cir. 1994).............................................17

Richbell Information Services, Inc. v. Jupiter Partners, 309 A.D.2d 288, 305, 765
N.Y.S.2d 575 (1st Dept. 2003)...................................................................................19

Telstar Resource Group, Inc. v. MCI, Inc., 476 F.Supp.2d 261, 274-75 (S.D.N.Y. 2007).9

Wall v. CSX Transportation, Inc., 471 F.3d 410, 416 (2nd Cir. 2006) ..............................12

**Statue**

Rule 3014 of the New York Civil Practice Law and Rules...............................................18

Rule 8(e)(2) of the Federal Rules of Civil Procedure........................................................18

Plaintiffs Michael H. Kaliner, the Chapter 7 Trustee for Barron ATM, LLC ("Kaliner") by his attorneys, Snow Becker Krauss P.C., respectfully submit this memorandum of law in opposition to Defendants motion to dismiss the Complaint filed by Plaintiff Kaliner on June 1, 2007.

## FACTS

On September 19, 2002, Barron ATM LLC ("Barron LLC") and Defendant Barron ATM Corporation ("Barron Corp.") entered into a contract for the purchase of ATM machines and contracts for their placement (collectively referred to as "ATMs") for a purchase price of $1,200,000.00 to be paid over a term of nine years with interest at 5% per annum payable in equal monthly installments of $13,820.73 (the Contract ¶ 18[*]). Installment payments on the Contract were made to Barron LLC through November 1, 2004, leaving an unpaid balance for the purchase price of the ATMs and contracts of $958,398.57 (¶¶ 21-27).

The only signatories to the Contract were Barron LLC and Barron Corp (¶¶ 18-19).   However, Barron Corp. was merely a front for the business dealings of Defendants Mt. Vernon Monetary Management Corp. ("MVMM") and Mt. Vernon Money Center Corp. ("MVMC") (¶¶ 15, 51-60).  Defendants MVMM, MVMC, and Barron Corp. were all wholly owned and operated by Robert F. Egan (¶ 11).  Barron Corp. did not have its own employees or its own office space. (¶¶ 12-13).   In fact, as Egan himself testified, Barron Corp. did not have any corporate meetings and Barron Corp. stock was never issued or transferred (Derek Wolman Declaration ¶¶ 9-10).

---

[*] All references are to the Complaint in this action unless otherwise noted.

2

From the time that Barron Corp. was incorporated on September 12, 2002, it was never adequately capitalized (¶¶ 14-15). Barron Corp. had no assets until it opened a bank account at JP Morgan Chase Bank on January 31, 2003, more than four months after Barron Corp. entered into the Contract, with a deposit of a single penny (¶ 15). The majority of the installment payments that were made on the contract for the purchase of ATMs were made by MVMM or MVMC, not Barron Corp (¶¶ 21-23). Furthermore, Barron Corp. did not receive any of the revenue earned from the ATMs. All of the revenue was diverted into the bank accounts of MVMM and MVMC (¶ 56).

As the Plaintiff's Complaint clearly alleges, there was never any meaningful differentiation between MVMM, MVMC, and Barron Corp. (¶¶ 12-13, 20, 57-58). From the time of its incorporation, Barron Corp. was the alter ego of MVMM and MVMC. It was created to serve as a front for MVMM and MVMC to insulate them from the unpaid portion of the purchase price of the ATMs from Barron LLC (¶¶ 59-60).

## PRELIMINARY STATEMENT

In Defendants' Motion to Dismiss, they argue that MVMM and MVMC are not subject to Plaintiff's breach of contract claim because they are not signatories to the Contract. As will be shown herein, under New York law, a non-party may be bound by a contract when the signatory is merely the alter ego of the non-party. Consequently, because Barron Corp. was the alter ego of Defendants MVMM and MVMC, they are subject to Plaintiff's breach of contract claim.

Defendants also argue that Plaintiff's are foreclosed from asserting quasi contract claims of quantum meruit and unjust enrichment because of the existence of a contract. However, when there is a bona fide dispute over the existence of a contract, a plaintiff is

allowed to plead causes of action for breach of contract, quantum meruit and unjust enrichment. Since Defendants MVMM and MVMC are disputing the existence of a contract with Barron Corp., Plaintiff is certainly permitted to plead causes of action for breach of contract, quantum meruit and unjust enrichment.

Defendants' final argument in its Motion to Dismiss is directed towards Plaintiff's allegations of fraud. Defendants claim that the Plaintiff failed to allege in the Complaint a material misrepresentation, reasonable reliance, and causation. In a footnote, Defendants also argue that the fraud claim is not valid because it is duplicative of the contract claim. As is shown herein, Plaintiffs have adequately pled its fraud claim. Furthermore, Rule 8(e)(2) of the Federal Rule of Civil Procedures and Rule 3014 of the New York Civil Practice Law and Rules explicitly provides that a plaintiff may plead causes of action in the alternative.

Additionally, if this Court dismisses Plaintiff's breach of contract action against either of Defendants MVMM and MVMC, the Plaintiff should be allowed to pursue its claim for fraud against the Defendants because the contract claim and the fraud claim would not then be duplicative.

4

**ARGUMENT**

**POINT I**

THIS COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIM FOR BREACH OF
CONTRACT

It is undisputed that the Contract Barron LLC entered into with Barron Corp. was

not signed by Defendants MVMM or MVMC.  Generally, only those who are parties to a

contract may be held liable for breach of that contract.  Rastogi v. Beth Israel Med. Ctr.,

97 Civ. 9537 LAP; 1999 U.S. Dist. LEXIS 12284 (S.D.N.Y. 1999).   However, in New

York, it is well settled law that a contract can bind a non-signatory when his or her agent

signed the contract, the contract was assigned to or assumed by the non-signatory, or the

party that signed the contract is really the alter ego of the non-signatory.  Global

Entertainment, Inc. v. New York Telephone Company, 2000 WL 1672327 (S.D.N.Y.

2000); International Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1255-

56 (S.D.N.Y. 1995); Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d Cir. 1985);

Campo v. 1st Nationwide Bank, 857 F.Supp. 264, 271-72 (E.D.N.Y. 1994).

In this case, Barron Corp. is the alter ego of Defendants MVMM and MVMC.  To

demonstrate that a corporation is merely an alter ego of another corporation or individual,

the plaintiff must prove the following elements: 1) absence of corporate formalities; 2)

inadequate capitalization; 3) personal use of corporate funds; and 4) perpetuation of fraud

through the corporate vehicle.  Crabtree v. Tristar Automotive Group, Inc., 776 F.Supp.

155, 156 (S.D.N.Y. 1991).  The plaintiff must also prove that the defendant used the

privilege of the corporate form for an improper purpose.  Id.

For example, the court in Campo v. 1st Nationwide Bank, 857 F.Supp. 264, 271-

72 (E.D.N.Y. 1994), held that the complaint stated a valid cause of action for breach of

contract against the defendant, a nonsignatory of the disputed contract, because the plaintiff sufficiently pled that the defendant was the alter ego of the corporation that actually signed the contract. Specifically, the complaint alleged that the defendant and the signatory of the contract had the same owner, same officer, director, managers, and that the defendant took revenues for its own account. The Campo complaint also alleged that the defendant abused the privilege of doing business in the corporate form by using a network of subsidiaries to avoid federal regulations.

The conduct of MVMM and MVMC clearly meets the standards to establish that Barron Corp. was their alter ego and therefore they are bound by the contract. There is no real difference between the businesses of MVMM, MVMC and Barron Corp.

As the Complaint alleges, Egan is the owner of 100% of the issued and outstanding shares of stock in MVMM, MVMC, and Barron Corp (¶ 11). Barron Corp. did not have its own office space; it merely shared the same address as Defendants MVMM and MVMC (¶ 12). Barron Corp. never had its own employees (¶ 57). Barron Corp. held no meetings and had no stock issued or transferred (Derek Wolman Declaration ¶¶ 9-10).

Barron Corp. was never adequately capitalized. Barron Corp. had no assets on or about September 19, 2002, when the contract was entered into, and did not have any assets until it opened a bank account at JP Morgan Chase Bank on January 31, 2003, more than four months after the Contract was entered into, with a deposit of one penny (¶ 15).

The initial payments under the Contract were made through MVMC. In fact, MVMC made 19 of the 21 total payments Barron LLC received for the purchase of the

6

ATMs (¶ 21-24). MVMC made the first three payments by check (¶ 21). Subsequently, MVMC made 16 additional payments by wire transfer (¶ 22-23). The last two payments, made to the Trustee in the Bankruptcy of Barron LLC, were made by Barron Corp. (¶¶ 24-27, 59). Furthermore, the revenues received from the ATM machines were diverted into the accounts of MVMC and/or MVMM (¶ 56). Barron Corp. never received revenues from the ATMs (¶¶ 57, 59). Therefore, MVMC and/or MVMM must have funded the two Barron Corp. payments to Barron LLC's Trustee in Bankruptcy.

Barron Corp. was a front for MVMM and MVMC that was designed for the improper purpose of shielding MVMC and MVMM from the unpaid portion of the purchase price of the ATMs purchased from Barron LLC (¶¶ 59-60).

Like Campo, where the court held that the plaintiffs sufficiently pled an alter ego theory of liability by alleging common ownership, failure to observe corporate formalities and doing business in the corporate form to perpetrate a wrong, the Plaintiff here has sufficiently pled that Barron Corp. never operated as an independent company and was merely a façade for MVMM and MVMC that was designed with the improper purpose of shielding MVMC and MVMM from the unpaid portion of the purchase price of the ATMs from Barron LLC.

**POINT II**

THE PLAINTIFF'S CLAIMS FOR QUANTUM MERUIT AND UNJUST
ENRICHMENT ARE PROPERLY ASSERTED

In the Complaint, the Plaintiff asserts two causes of action seeking quasi contract relief. The second cause of action is for quantum meruit while the third cause of action is for unjust enrichment. The general rule in New York is that the existence of a valid and enforceable written contract governing a particular subject mater ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. MacDraw, Inc. v. The CIT Group Equipment Financing, Inc., 157 F.3d 956, 964 (2ⁿᵈ Cir. 1997) (citing U.S. East Telecommunications, Inc. v. U.S. West Communications Services, Inc., 38 F.3d 1289, 1296 (2d. Cir. 1994).

However, an exception to this rule exists where there is a bona fide dispute as to the existence of a valid contract. Telstar Resource Group, Inc. v. MCI, Inc., 476 F.Supp.2d 261, 274-75 (S.D.N.Y. 2007). Therefore, when there is a bona fide dispute as to the existence of a contract, the plaintiff may proceed upon a quasi contract theory and will not be required to elect remedies. Joseph Sternberg, Inc. v. Walber 36th Street Associates, 187 A.D.2d 225, 228, 594 N.Y.S.2d 144, 146 (1st Dept. 1993); Liu v. Beth Israel Medical Center, 2003 WL 21488081 (S.D.N.Y. 2003); IIG Capital LLC v. Archipelago, LLC, 36 A.D.3d 401, 405, 829 N.Y.S.2d 10, 14 (1st Dept. 2007); Fisher v. A.W. Miller Techincal Sales, Inc., 306 A.D.2d 829, 834, 762 N.Y.S.2d 205, 209 (4th Dept. 2003).

In this case, the Plaintiff may properly assert causes of action for breach of contract, quantum meruit and unjust enrichment because, as the Defendants assert in their motion, a bona fide dispute exists between the parties as to the existence of a contract. Defendants MVMM and MVMC argue that they did not enter into a contract with Barron LLC because they did not sign the Contract. It is the Plaintiff's position that the absence of Defendants MVMM and MVMC's signatures on the contract is irrelevant because Barron Corp, the party that signed the contract, is really Defendants MVMM and MVMC's alter ego.  Clearly, by virtue of this controversy, Plaintiff does not need to elect its remedies.

**POINT III**

THE CLAIM FOR FRAUD SHOULD NOT BE DISMISSED

Plaintiff has sufficiently pled its fourth cause of action for fraud by alleging the elements of fraud with specificity. Although the assertion of causes of action for fraud and breach of contract are not permitted when they are duplicative of one another, both the Federal Rules of Civil Procedure and the New York Civil Practice Laws and Rules permit a plaintiff to plead alternative claims of relief. Therefore, Plaintiff's fraud claim against Defendants MVMM and MVMC cannot be dismissed as duplicative of the contract claim because the Court may decide that the contract claim is not viable against Defendants MVMM and MVMC.

**A.    Plaintiff has sufficiently pled a cause of action for fraud.**

To prove a fraud claim in New York, the Plaintiff must show that 1) the defendant made a material false representation, 2) the defendant intended to defraud the plaintiff thereby, 3) the plaintiff reasonably relied upon the representation, and 4) the plaintiff suffered damage as a result of such reliance. Wall v. CSX Transportation, Inc., 471 F.3d 410, 416 (2nd Cir. 2006).

1.    Plaintiff's sufficiently alleged that Defendants made a material misrepresentation.

A promise made with a preconceived and undisclosed intention of not performing it, constitutes a misrepresentation for purposes of fraud. Deerfield Communications Corporation v. Chesbrough-Ponds, Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88 (1986). The misrepresentation must be material in order to demonstrate fraud. Courts that have discussed the matter of materiality look to the effect on the likely or actual recipient of

the alleged misrepresentation.  Generally, it is said that a misrepresentation is material if it concerns a matter to which a reasonable person would attach importance in determining his or her choice of action with respect to the transaction involved.  26 Williston on Contracts § 69:12 (4th edition).  Hence, a misrepresentation that has a negligible effect cannot be said to be material.  Dunkin' Donuts, Inc. v. HWT Associates, Inc., 181 A.D.2d 711, 581 N.Y.S.2d 363 (2nd Dept 1992).

The Defendants in this case made a material false misrepresentation by promising that Barron Corp. was adequately capitalized to purchase the ATMs.  Defendants initiated the disputed transaction in this case by sending a letter to Barron LLC on September 19, 2002 offering to purchase Barron LLC's ATMs for $1,200,000 to be paid over a term of nine (9) years with interest at 5% per annum payable in equal monthly installments of $13,820.73 (¶ 18).  Barron LLC had a standing business relationship with Defendants MVMM and MVMC, who had previously performed services on behalf of Barron LLC in connection with the managing of the ATM machines located in New York (¶ 16). Therefore, Barron LLC knew that Defendants MVMM and MVMC had sufficient assets to honor the Contract and accepted the Defendants offer (¶ 19).

The fact that Barron Corp. signed the Contract was insignificant to Barron LLC because it knew that Defendants MVMM and MVMC were really financing the deal would continue to service the ATMs and would receive the benefit of the Contract. Hence, Barron LLC had no reason to suspect that something was afoot when it received the first 19 instalment payments from MVMC (¶¶ 21-23).  Barron LLC did not know that Defendants MVMM and MVMC intended to use Barron Corp. as a shield to insulate itself from having to pay the remaining balance for the ATMs.  Indeed, if Barron LLC

knew of Defendants fraudulent scheme, it certainly would not have agreed to enter the Contract with Barron Corp.

### 2. Defendants MVMM, MVMC, and Barron Corp. intended to defraud Barron LLC.

The law does not require specific intent for a fraud claim. Houbigant, Inc. v. Deloitte & Touche LLP, 303 A.D.2d 92, 100, 753 N.Y.S.2d 493, 499 (1st Dept. 2003). Rather, the plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff. Id.

Plaintiffs have sufficiently alleged enough facts to demonstrate that Defendants were aware that Barron LLC would reasonably rely upon Defendants misrepresentations. Specifically, the Complaints alleges the following facts: 1) Barron LLC had a long standing business relationship with Defendants MVMM and MVMC and knew that both companies had considerable assets to finance the Contract (¶ 16); 2) There was no meaningful difference between MVMM, MVMC, and Barron Corp. because they had the same ownership, same office facilities, and same employees (¶¶ 11-13); 3) Since Defendant Barron Corp. was never a real entity and had no assets (¶ 15), it was Defendants MVMM and MVMC that offered to buy Barron LLC's ATMs for $1,200,000 (¶ 18); 4) Defendant MVMC made 19 of the 21 installment payments that Barron LLC received pursuant to the Contract (¶¶ 21-23); 5) Defendants stopped making payments in November 2004 (¶¶ 25-27); 6) a balance of $958,398.57 remains; and 7) Defendants MVMM and MVMC have taken and continue to exercise ownership and control over the ATMs purchased from Barron LLC (¶ 47). These facts certainly demonstrate that the

Defendants MVMM, MVMC and Barron Corp. intended to defraud the Plaintiff by establishing Barron Corp. as a front in the purchase of Barron LLC's ATMS, thereby shielding Defendants MVMC and MVMM from the unpaid portion of the purchase price of the ATMs purchased from Barron LLC.

### 3.  Barron LLC reasonably relied on Defendants representations that it would honor the Contract

Defendants argue that Barron LLC can not allege to have reasonably relied on Defendants promises to honor the Contract because Barron LLC did not inquire "as to how Barron Corp. would pay the purchase price, what assets would be held or received by Barron Corp., and what the corporate relationship was to be between Barron Corp. and the Mount Vernon Defendants" (Defendants' Memo. Of Law, p. 7-8). There is no such duty to investigate the intentions of a party entering into a contract.

In their argument, Defendants rely on Banque Arabe Et Internationale D'Investissement, 57 F.3d 146 (2nd Cir. 1995) to support its position that there is no reasonable reliance where the risk was known and the information was readily available. However, in Banque Arabe, the contract between the parties explicitly provides that plaintiff would not rely on any information provided by the defendant. Furthermore, Banque Arabe states that, despite the existence of a no-reliance provision, the plaintiff could still rely on the defendant to disclose information that is "peculiarly within the knowledge" of the defendant.

Unlike Banque Arabe, an explicit nonreliance contractual provision does not exist in this case. Also, from Banque Arabe, it is clear that Defendants in this case should have disclosed information that was "peculiarly within [its] knowledge," such as Defendants plan not to fund Barron Corp. with adequate assets to honor the Contract while keeping

13

the benefits of the Contract all to itself. The sale by Barron LLC of the ATMs to

Defendants was in reliance upon Defendants' promise to pay the agreed purchase price

and Barron LLC turned over title to the ATMs in reliance on that promise (¶¶ 61-62).

Moreover, it appears that Defendants ignore that all contracts imply a covenant of

good faith and fair dealing in the course of performance. An implied covenant of good

faith and fair dealing embraces a pledge that neither party shall do anything which will

have the effect of destroying or injuring the right of the other party to receive the fruits of

the contract. 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153,

746 N.Y.s.2d 131, 136 (2002). Defendants breached the implied covenant of good faith

by representing to Barron LLC that Barron Corp. had the ability to pay the purchase price

and that it would honor the Contract while MVMC and MVMM exercised complete

ownership over the purchased ATMs and kept the revenues from the ATMs.

### 4. Barron LLC was damaged by Defendants' fraud.

The Plaintiff has sufficiently alleged that Barron LLC suffered damage as a result

of Defendants' fraud. Defendants cite to Revak v. SEC Realty Corp., 18. F.3d 81, 90 (2nd

Cir. 1994) to explain that a showing of damage requires that the plaintiff demonstrate that

the injury flowed from the defendants' alleged fraud and is, therefore, a direct result of

the defendants' wrongful actions and independent of other causes. In Revak, which

involved an action by condominium purchasers against vendors alleging nondisclosure of

a gas well on the property, the court held that the plaintiffs failed to demonstrate that they

were damaged by the defendants' alleged fraud because the only detriment asserted by

plaintiffs was that they were "saddled with notes and deeds of trust whose default terms

were far more onerous than they had been prepared to agree to." Hence, the plaintiffs

failed to identify any loss attributable to the defendants conduct.

Unlike <u>Revak</u>, the Plaintiff here has alleged that as a direct result of Defendants'

fraudulent conduct, Barron LLC has suffered damages in excess of $958,398.57.

Defendants lulled Barron LLC into believing that Barron Corp. had sufficient assets to

honor the Contract (¶¶ 61-62). In reliance upon Defendants promises that they would pay

the Plaintiff the entire purchase price under the Contract, Barron LLC allowed Plaintiff to

take ownership of its property (¶ 62). Defendants stopped making installment payments

to Barron LLC in November 2004 (¶ 63). Since then, Defendants MVMM and MVMC

have and continue to exercise ownership over and to receive substantial revenue from

Barron LLC's ATMs (¶ 56). Defendant MVMM and MVMC created Barron Corp. as a

front and kept it inadequately capitalized to insulate it from paying the remaining balance

of the Contract, while receiving the substantial benefit of collecting revenues from the

ATMs (¶¶ 64-67). As a direct result of Defendants fraudulent schemes and

misrepresentations, Plaintiff has suffered an injury in excess of $958,398.57 (¶¶ 64-67).

**B.      Plaintiff may plead its fraud claim against the Defendants in the alternative.**

Rule 8(e)(2) of the Federal Rules of Civil Procedure and Rule 3014 of the New

York Civil Practice Law and Rules permit causes of action to be stated alternatively,

regardless of their consistency with each other. There is no requirement that the

complaint include "in the alternative" language or other particular words as long as it can

be reasonably inferred that the plaintiff intends to plead in the alternative. <u>G-1 Holdings,</u>

<u>Inc. v. Baron & Budd</u>, 238 F.Supp2d 521, 536-37 (S.D.N.Y. 2002). The statutes thus

permit a plaintiff to plead in the first cause of action that there was a contract and in the

15

second cause of action that there was none. The Court of Appeals, in Deerfield

Communications v. Chesebrough-Ponds, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89

(1986), recognized that a party may plead breach of contract and fraud in the alternative

based on the same promise. In Deerfield, the defendants asserted counterclaims for

breach of contract and fraud. The contract and fraud claims were based on the promise

that Deerfield would not resell defendant's products in certain countries. Rather than

holding that pleading a contract claim foreclosed the plaintiff from pleading its fraud

claim, the Court held that because the contract was unenforceable, the defendant was

permitted to recover damages on the fraud claim.

Furthermore, since a fraud claim may be dismissed as duplicative only as against

a defendant whom a related contract claim is viable, Richbell Information Services, Inc.

v. Jupiter Partners, 309 A.D.2d 288, 305, 765 N.Y.S.2d 575 (1st Dept. 2003), a fraud

claim will survive against parties against whom the plaintiff's contract action is

dismissed.

In this case, the Plaintiff's have asserted causes of action for breach of contract

and fraud against Defendants MVMM, MVMC and Barron Corp. As Defendants'

motion papers demonstrate, there is a dispute as to the existence of a contract between the

Mount Vernon Defendants and Barron LLC. If this Court dismisses Plaintiff's contract

action against either or both Defendants MVMM and MVMC, it would be manifestly

unfair if the Defendants could avoid liability for their fraudulent representations and

wrongful conduct by arguing that the fraud claim is duplicative of the contract claim.

Therefore, Plaintiff's causes of action for fraud should survive.

16

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court deny

Defendants' Motion to Dismiss in all respects.

Dated: New York, New York
       September 28, 2007

Respectfully submitted,

SNOW BECKER KRAUSS P.C.

By:_____
       Derek Wolman

Attorneys for Plaintiff
605 Third Avenue, 25th Floor
New York, New York 10158-0125
(212) 687-3860

17