UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL H. KALINER, as Chapter 7 Trustee for :
BARRON ATM, LLC,                              :
                                              :    Civil Action No.
                Plaintiff,                    :    07 Civ. 4643 (LMM)
                                              :
        v.                                    :
                                              :
MT. VERNON MONETARY MANAGEMENT                :
CORP. d/b/a MVMM CORP., MT. VERNON            :
MONEY CENTER CORP. d/b/a MVMC                 :
CORP., and BARRON ATM CORP.,                  :
                                              :
                Defendants.                   :
------------------------------------------------------------x


**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.     Barron Corp. is Not an Alter Ego of the Mount Vernon Defendants, and the Claim for Breach of Contract Should Be Dismissed as to the Mount Vernon Defendants................................................................................................... 2

    II.    The Claim for Fraud Should Be Dismissed as to All Defendants............................. 7

CONCLUSION ..........................................................................................................................10

## **TABLE OF AUTHORITIES**

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955, __ U.S. __ (2007) .................................................................. 9, 10

Brunswick Corp. v. Waxman,
    459 F. Supp. 1222 (E.D.N.Y. 1978) aff'd, 599 F.2d 34 (2d Cir. 1979) .............................. 5

Best Western International, Inc. v. CSI International Corp.,
    No. 94 Civ. 0360 (LMM) 1994 U.S. Dist. LEXIS 11815 (S.D.N.Y. Aug. 23, 1994) .... 2, 6

Comtomark v. Satellite Communications Network,
    116 A.D.2d 499 (1st Dep't 1986) ..................................................................... 7

Durban Confectionery Works, Ltd. v. Schnapp's Conf.,
    No. 88 Civ. 6592 (MBM), 1989 U.S. Dist. LEXIS 13542 (S.D.N.Y. Nov. 15, 1989) ........ 5

Eagle Transport, Ltd. v. O'Connor,
    470 F. Supp. 731 (S.D.N.Y. 1979) ................................................................. 6

Fletcher v. Greiner,
    73 A.D.2d 591, 422 N.Y.S.2d 130 (2d Dep't 1979) .............................................. 8

Four Star Capital Corp. v. Nynex Corp.,
    93 Civ. 3706 (LMM), 1993 U.S. Dist.
    LEXIS 12451 (S.D.N.Y. Sept. 8, 1993) ............................................................. 6

Green v. Beer,
    06 Civ. 4156 (KMW), 2007 U.S. Dist.
    LEXIS 12557 (S.D.N.Y. Feb. 18, 2007) ............................................................ 7

Gould v. Community Health Plan, Inc.,
    99 A.D.2d 479, 470 N.Y.S. 2d 415 (2d Dep't 1984) ............................................ 8

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007) ........................................................................ 10

In Re Kreisler Group, Inc.,
    No. 79 B 1704, 1980 Bankr. LEXIS 4684
    (Bankr. S.D.N.Y. Aug. 6, 1980) ..................................................................... 5

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) ......................................................................... 7

Nicholson v. Tweedy,
    No. 06 CV 471 (RJD) *RML), 2007 U.S. Dist.
    LEXIS 56873 (E.D.N.Y. Aug. 3, 2007) .................................................................... 2

Planetarium Travel, Inc. v. Whitehouse Travel Co.,
    No. 97 Civ. 2186 (LMM), 1998 U.S. Dist. LEXIS 2128 (S.D.N.Y. Feb. 26, 1998) .......... 7

Solon Automated Serv., Inc. v. Executor or Administrator of Garfinkel, et al.,
    No. 79 Civ. 512, 1982 U.S. Dist. LEXIS 11405 (S.D.N.Y. Feb. 23, 1982) ...................... 6

Vanderburgh v. Porter Sheet Metal, Inc.,
    86 A.D.2d 688, 446 N.Y.S.2d 523 (3d Dep't 1982) ................................................. 8

William Wrigley Jr. Co. v. Waters,
    890 F.2d 594 (2d Cir. 1989) ................................................................................. 6

Zinaman v. USTS New York, Inc.,
    798 F. Supp. 128 (S.D.N.Y. 1992) ......................................................................... 8

Defendants MVMM Corp.,[1] Mount Vernon Money Center Corp.[2] (together, the "Mount Vernon Defendants"), and Barron ATM Corp. ("Barron Corp."; together with the Mount Vernon Defendants, "Defendants"), respectfully submit this reply memorandum of law in further support of their Motion to Dismiss the Complaint filed by Plaintiff Michael H. Kaliner ("Plaintiff"), the Chapter 7 Trustee for Barron ATM, LLC ("Barron LLC"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity and for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This case arises out of an alleged breach of an alleged contract dated September 19, 2002 between Barron LLC and Barron Corp., concerning the acquisition of 35 automated teller machines ("ATMs") and contracts for their placement.

The Complaint asserts four claims against each of the Defendants: breach of contract, quantum meruit, unjust enrichment, and fraud. As set forth below, (i) Plaintiff cannot state a claim for breach of contract against the Mount Vernon Defendants since Plaintiff in his opposition to the motion acknowledges they were not parties to the alleged contract, and Barron Corp. is not an alter ego of the Mount Vernon Defendants, and (ii) Plaintiff has not stated a claim for fraud, because Plaintiff has not alleged a misrepresentation that is not duplicative of a contract claim, and in addition the alleged misrepresentations are either nowhere to be found in the Complaint or are totally implausible in view of Plaintiff's other statements in this case.

Defendants agree that Plaintiff should be permitted, for now, to maintain his quantum meruit and unjust enrichment claims as alternatives to his breach of contract claim, because Defendants will in answering the Complaint plead that the document Plaintiff characterizes as a contract is only an offer letter, and, in fact, the parties never reached an

---

[1]   Incorrectly named in the Complaint as "Mt. Vernon Monetary Management Corp. d/b/a MVMM Corp."
[2]   Incorrectly named in the Complaint as "Mt. Vernon Money Center Corp."

1

agreement. See Nicholson v. Tweedy, No. 06 CV 471 (RJD) (RML), 2007 U.S. Dist. LEXIS 56873 at *7 (E.D.N.Y. Aug. 3, 2007) ("[b]ecause the parties themselves contest the existence of an enforceable contract, it is premature for the Court to rule on whether plaintiffs' quasi-contract claim is precluded").

## ARGUMENT

### I. Barron Corp. is Not an Alter Ego of the Mount Vernon Defendants, and the Claim for Breach of Contract Should Be Dismissed as to the Mount Vernon Defendants

Plaintiff admits that the Mount Vernon Defendants were not parties to the alleged contract. See Plaintiff's Memorandum of Law dated September 28, 2007 ("Pl. Mem.") at 5. However, Plaintiff now argues that Barron Corp. is an alter ego of the Mount Vernon Defendants, and that this Court should hold the Mount Vernon Defendants liable on the alleged contract.[3] Id.

To support his argument, Plaintiff attaches two pages from a deposition of Robert F. Egan taken on April 26, 2007 by Mr. Wolman, the attorney for Plaintiff in this case.[4] That deposition was taken in the Barron LLC bankruptcy proceeding. Defendants do not believe that it would be fair or appropriate for the Court to convert this motion to dismiss into a motion for summary judgment based upon Mr. Wolman's introduction of documents outside the pleadings. To do so would give Plaintiff an unfair advantage since Plaintiff has already conducted discovery in the bankruptcy proceeding and Defendants, of course, have not had an opportunity to conduct any discovery in this case. Nonetheless, in an abundance of caution, Defendants are submitting herewith affidavits, including testimony taken by Mr. Wolman in a deposition of Richard Miro,

---

[3]     Plaintiff never used the terms "alter ego" or "piercing the corporate veil" in his Complaint. Moreover, all of the allegations Plaintiff cites to in his Memorandum of Law to support his argument that Barron Corp. is an alter ego of the Mount Vernon Defendants were alleged in support of Plaintiff's fraud claim. (Compl. ¶¶ 50-67.) As noted in Best Western International, Inc. v. CSI Int'l Corp., 94 Civ. 0360 (LMM), 1994 U.S. Dist. LEXIS 11815 at *12 (S.D.N.Y. Aug. 23, 1994) (McKenna, J.), "While Plaintiff has alleged fraud . . . the breach of contract claim is distinct from these claims and thus the allegation of fraud cannot be the vehicle for disregarding the corporate form with respect to the breach of contract claim." For this reason alone, the breach of contract claim should be dismissed as to the Mount Vernon Defendants.
[4]     Mr. Egan is the president, sole shareholder and sole director of each of the Defendants. Egan Aff. ¶ 1.

2

Barron Corp.'s former comptroller, in the bankruptcy proceeding. These affidavits demonstrate that there is clearly a triable issue of fact as to whether Barron Corp. is the alter ego of the Mount Vernon Defendants. In view of the early stage of this case, however, these affidavits are not intended to be a full exposition of the Defendants' position on alter ego or the other claims and defenses in this action. Such exposition must await discovery.

Plaintiff argues that Barron Corp. is an alter ego of the Mount Vernon Defendants because (1) there was an identity of ownership, (2) Barron Corp. did not have its own office space or employees, (3) Barron Corp. did not have director or shareholder meetings, nor did it formally issue the stock certificate to Mr. Egan, (4) Barron Corp. was "never adequately capitalized," and (5) revenues from the ATMs were "diverted" to the Mount Vernon Defendants. Pl. Mem. at 6-7.

Barron Corp. is not the alter ego of either of the Mount Vernon Defendants. Barron Corp., MVMM Corp. and Mount Vernon Money Center Corp. are all separately incorporated entities, each duly organized under the laws of the State of New York. See Exh. A to the accompanying Affidavit of Robert F. Egan ("Egan Aff.") sworn to October 10, 2007. Barron Corp. owns and operates the ATMs acquired from Barron LLC. Egan Aff. ¶ 1. MVMM Corp. provides management, administrative, accounting and payroll services to corporations wholly or partially owned by Mr. Egan.[5] Egan Aff. ¶ 1. Mount Vernon Money Center Corp. is in the business of servicing approximately 7250 ATMs, of which approximately 7000 are owned by third parties, and approximately 250 are owned by Mr. Egan's companies. These services include replenishing the cash and servicing and repairing the machines. Egan Aff. ¶ 1. Mount Vernon Money Center Corp. also provides on-site payroll services and armored deliveries. Egan Aff. ¶ 1.

Barron Corp. maintains separate books of accounting, and has done so since its inception in September 2002. See Exh. A to the accompanying Declaration of Karen F. Lederer

---

[5] In addition to the corporations that are defendants in this action, Mr. Egan owns several other companies engaged in check cashing, security systems, owning and operating ATMs, and farming.

3

("Lederer Decl.") (Miro Aff. 70:8-21). Barron Corp's revenues and expenses are recorded in the books and records of Barron Corp. See Exh. B to Lederer Decl. (Miro Dep. 63:24-65:23).

Barron Corp. has never generated a profit. Egan Aff. ¶ 8. Therefore, Mount Vernon Money Center Corp. made advances to Barron Corp. to enable Barron Corp. to cover its expenses, including the monthly payments Barron Corp. made to Barron LLC for over two years. See Exh. B to Lederer Decl. (Miro Dep. 60:14-67:22). When Mount Vernon Money Center Corp. advanced funds to Barron Corp., corresponding entries were recorded on the books and records of both companies. See Exh. B to Lederer Decl., (Miro Dep. 60:14-67:22). Likewise, when Barron Corp. made a repayment to Mount Vernon Money Center Corp., corresponding entries were recorded on the books and records of both companies. See Exh. B to Lederer Decl. (Miro Dep. 60:14-67:22). At his deposition, Mr. Miro testified in detail about the entries on Barron Corp.'s Income Statement for 2004, and his testimony reveals that this was the standard accounting practice. See Exh. C to Lederer Decl. (Miro 103:16-115:3). At the end of each year, there is a reconciliation that includes a capital contribution by Mr. Egan to Mount Vernon Money Center Corp. to cover any short fall in Barron Corp.'s repayments to Mount Vernon Money Center Corp. Egan Aff. ¶ 8.

In support of his alter ego argument, Plaintiff points to the allegation in his Complaint that Barron Corp. did not have its own employees. In view of the above description of Mount Vernon Money Center Corp.'s business, it made perfect economic sense for that company, which services over 7000 other ATMs, to also service the 35 ATMs owned by Barron Corp. Moreover, Mount Vernon Money Center Corp. charged Barron Corp. for cash replenishment and service and repair calls it provided to Barron Corp., and these intercompany transactions were recorded on the books and records of both companies and were part of the year-end reconciliation. Egan Aff. ¶¶ 7 & 8.

4

Plaintiff also points to Mr. Egan's testimony that he did not have corporate meetings. Since Mr. Egan is the only shareholder and the only director of Barron Corp., Plaintiff is in effect criticizing the fact that Mr. Egan did not have meetings with himself and document those meetings.

Turning to Plaintiff's argument that Barron Corp. was required to have a significant reserve of capital to supplement the income from the ATM machines, knowledge of under-capitalization has been construed as a bar to inclusion of this factor for consideration in a piercing claim. For example, in Brunswick Corp. v. Waxman, 459 F. Supp. 1222 (E.D.N.Y. 1978), aff'd, 599 F.2d 34 (2d Cir. 1979), the court held:

> Although under-capitalization of the bowling operation might under other circumstances indicate that the corporate form was being used to mislead creditors and should be pierced, Brunswick had full knowledge of the lack of capitalization, and consented to it. Brunswick was not misled into doing business with a no-asset corporation and is hardly in a position now to complain that in the absence of any additional assets in that corporation its liability should be shifted to the Waxmans.

459 F. Supp. at 1231-1232 (internal citation omitted);[6] see also Durban Confectionery Works, Ltd. v. Schnapp's Conf., No. 88 Civ. 6592 (MBM), 1989 U.S. Dist. LEXIS 13542, *6 (S.D.N.Y. Nov. 15, 1989) ("Plaintiff was well aware, when it dealt with MSCI, that MSCI was a one-man operation and that it could look only to the corporation for redress in the event of a dispute . . . [and Plaintiff] 'obtained precisely what it bargained for, and it did not bargain for or contemplate the individual liability . . . which it now seeks to enforce') (quoting Brunswick Corp. v. Waxman, 599 F.2d 34, 36 (2d Cir. 1979)); In re Kreisler Group, Inc., No. 79 B 1704, 1980 Bankr. LEXIS 4684, *11 (Bankr. S.D.N.Y. Aug. 6, 1980) ("plaintiff herein has failed to prove that it entered into

---

[6] The court in Brunswick Corp., 459 F. Supp. at 1231 (internal citations omitted), further recognized the legitimate uses of undercapitalized corporations: "[s]traw corporations have been used for many [legitimate] purposes, such as compliance with state usury or investment laws, facilitation of the conveyance of property, and insulation of principals from liability."

5

the contract with [MS] upon the credit of any person or corporation other than MS, or that Seventh Avenue was misled into believing that MS had assets"); Eagle Transp., Ltd. v. O'Connor, 470 F. Supp. 731, 733 (S.D.N.Y. 1979) (denying summary judgment on alter ego theory where "it appear[ed] that Eagle had full knowledge of Atlantic's undercapitalization"). Plaintiff admits that Barron LLC knew all along that the Mount Vernon Defendants were providing the funds for the monthly payments. Pl. Mem. at 11. Indeed, Mr. Miro testified that the three checks for first the three monthly payments were enclosed in the offer letter Barron Corp. sent to Barron LLC and all of them were written on a Mount Vernon Money Center Corp. bank account. Exh. D. to Lederer Decl. (Miro Dep. 24:18-25:7). And Plaintiff alleges that the agreement was that Barron Corp. would pay the purchase price over a very long period of time, 9 years. (Compl. ¶ 18). Yet Plaintiff does not allege that Barron LLC demanded a guarantee or co-signature from the Mount Vernon Defendants. Cf. Solon Automated Serv., Inc. v. Ex'r or Adm'r of Garfinkel, et al., No. 79 Civ. 512, 1982 U.S. Dist. LEXIS 11405, *6 (S.D.N.Y. Feb. 23, 1982) (because Plaintiff knew Defendants dealt through shell corporations and Plaintiff did not request guarantees, "to pierce the corporate veil would not accomplish justice or equity").

"Courts applying New York law are reluctant to disregard the corporate entity." Best W. Int'l, Inc., 1994 U.S. Dist. LEXIS 11815 at *11 (McKenna, J.) (citing William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989). This is not a case in which the corporate form was abused for nefarious purposes. Egan ¶ 4. Cf. Four Star Capital Corp. v. Nynex Corp., 93 Civ. 3706 (LMM), 1993 U.S. Dist. LEXIS 12451 at *15 (S.D.N.Y. Sept. 8, 1993) (McKenna, J.) (corporate veil should be pierced "only upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties") (quotation omitted).

Based on the foregoing, there is clearly a genuine issue of material fact as to the alter ego issue.

## II. **The Claim for Fraud Should Be Dismissed as to All Defendants**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Where a claim is subject to Rule 9(b), "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." Green v. Beer, 06 Civ. 4156 (KMW), 2007 U.S. Dist. LEXIS 12557, *21 (S.D.N.Y. Feb. 18, 2007) (quotation omitted). Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id. at **21-22 (quotation omitted); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").

It is unclear from the Complaint precisely what is the misrepresentation upon which Plaintiff's fraud claim is based. Cf. Planetarium Travel, Inc. v. Whitehouse Travel Co., No. 97 Civ. 2186 (LMM), 1998 U.S. Dist. LEXIS 2128 at * 9 (S.D.N.Y. Feb. 26, 1998) (McKenna, J.) (Plaintiff failed to plead fraud claim with particularity where Plaintiff "d[id] not identify the statements it claim[ed] were false"). The only representations alleged in the fraud claim at all are as follows: (1) Defendants offered to purchase the ATM machines and contracts for their placement (Compl. ¶ 51), (2) Defendants promised to pay the agreed purchase price (Compl. ¶ 61), and (3) "Barron Corp. is liable for the $958,398.57 balance of the price" (Compl. ¶ 66). None of these representations can support a claim for fraud.

The first two representations merely duplicate elements of a breach of contract claim, and thus cannot support a claim for fraud, whether or not a breach of contract claim is simultaneously alleged. As stated in Comtomark v. Satellite Communications Network, 116 A.D.2d 499, 500 (1st Dep't 1986):

7

> Breach of promise sounds in contract, not fraud. A contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation.

See also Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 134 (S.D.N.Y. 1992) ("[a] failure to perform promises of future acts is merely a breach of contract to be enforced by an action in contract"); Gould v. Cmty. Health Plan, Inc., 99 A.D.2d 479, 480; 470 N.Y.S.2d 415, 417 (2d Dep't 1984) ("failure to fulfill promises to perform acts in the future is a breach of contract, and not fraud"); Vanderburgh v. Porter Sheet Metal, Inc., 86 A.D.2d 688, 688-89, 446 N.Y.S.2d 523, 525 ("failure to perform promises of future acts is a breach of contract, not fraud") (3d Dep't 1982); Fletcher v. Greiner, 73 A.D.2d 591, 591, 422 N.Y.S.2d 130, 131 (2d Dep't 1979) (dismissing fraud claim "since promissory statements of actions to be performed in the future do not provide a basis for an action in fraud," even though breach of contract claim was also dismissed as barred by the Statute of Frauds).

Although cases have held that a promise made with a preconceived and undisclosed intention of not performing can support a claim for fraud, Plaintiff never alleges that Barron Corp. did not intend to pay. In any case, such an allegation would be implausible, because Plaintiff admits that Barron Corp. made payments faithfully for over two years. (Compl. ¶¶ 21-22, 25.)

Turning to the third representation, which is that "Barron Corp. is liable for the $958,398.57 balance of the price," Plaintiff has failed to allege who made this statement or why it is false. Therefore, Plaintiff has failed to state a claim for fraud with the particularity required by Rule 9(b). Moreover, this allegation directly contradicts Plaintiff's breach of contract claim, in which he alleges that Barron Corp., in fact, is liable for the alleged balance of the price. (Compl. ¶¶ 30, 34.)

8

In his Memorandum of Law, Plaintiff states that Defendants also "made a material false misrepresentation by promising that Barron Corp. was adequately capitalized to purchase the ATMs." (Pl. Mem. at 11.) However, nowhere in his Complaint does Plaintiff allege that Defendants made such a representation. Plaintiff alleges that Barron Corp. was undercapitalized, but he never alleges that Defendants represented the opposite to Barron LLC.

Plaintiff also states that Defendants "represent[ed] to Barron LLC that Barron Corp. had the ability to pay the purchase price and that it would honor the Contract." (Pl. Mem. at 14.) Again, nowhere in his Complaint does Plaintiff allege that Defendants made such a representation. Plaintiff alleges that Barron Corp. did not have the ability to pay, but he never alleges that Defendants represented the opposite to Barron LLC.[7]

Plaintiff has also failed to allege reasonable reliance. Despite stating in his Memorandum of Law that Barron Corp. was the only entity to sign the alleged contract, Plaintiff also claims that the fact that Barron Corp. signed the contract was "insignificant to Barron LLC." Pl. Mem. at 11. Plaintiff argues that Barron LLC instead relied on the Mount Vernon Defendants' promise to finance the deal. Id. This is simply implausible and "does not raise a right to relief [based on fraud] above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, __ U.S. __ (2007) If Plaintiff's allegation that Barron LLC relied on the Mount Vernon Defendants' promise to finance the deal were true, Plaintiff could have easily insisted that the Mount Vernon Defendants be signatories to the alleged contract or that they provide a guarantee. Moreover, without a writing signed by the Mount Vernon Defendants evidencing such a promise to answer for Barron Corp.'s debt, Plaintiff could not reasonably rely on any such alleged promise, because the Statute of Frauds requires such promises to be in writing. Gen. Oblig. L. § 5-701(2).

---

[7] Plaintiff alleges a different misrepresentation in each section of his fraud argument, apparently because he is aware that he cannot allege a complete cause of action for fraud based on a single alleged misrepresentation by Defendants.

9

The Second Circuit has interpreted the recent Supreme Court decision in <u>Twombly</u>, 127 S. Ct. 1955, to require a Plaintiff "to amplify a claim with some factual allegations . . . to render the claim plausible." <u>Iqbal v. Hasty</u>, 490 F.3d 143, *35 (2d Cir. 2007). Because Plaintiff's claim for fraud is implausible, and Plaintiff has failed to plead fraud with the particularity required by Rule 9(b), Plaintiff's claim for fraud should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the instant motion be granted in all respects.

Dated:   New York, New York
         October 10, 2007

TROUTMAN SANDERS LLP

By _/s/ Karen F. Lederer_
Karen F. Lederer (KFL 2768)
Jennifer A. Huber (JH 4499)
Attorneys for Defendants
405 Lexington Avenue
New York, New York 10174
(212) 704-6000