```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
                                    :
MICHAEL H. KALINER, as Chapter 11   :
Trustee for BARRON ATM, LLC,        :
                                    :
              Plaintiff,            :
                                    :   07 Civ. 4643 (LMM)
     -against-                      :   MEMORANDUM AND ORDER
                                    :
MT. VERNON MONETARY MANAGEMENT      :
CORP. d/b/a MVMM CORP., MT. VERNON  :
MONEY CENTER CORP. d/b/a MVMC       :
CORP., and BARRON ATM CORP.,        :
                                    :
              Defendants.           :
                                    :
- - - - - - - - - - - - - - - - - -X
```

McKENNA, D.J.

**1.**

This dispute arises from an alleged contract dated September 19, 2002 between Barron LLC and Barron Corp., concerning the acquisition and placement of 35 automatic teller machines ("ATMs").

In his complaint, Plaintiff Michael H. Kaliner, the Chapter 11 Trustee for Barron ATM, LLC ("Kaliner"), asserts claims against Defendants MVMM Corp., Mount Vernon Money Center Corp. ("MVMC"; together with MVMM, the "Mount Vernon Defendants"), and Barron ATM Corp. ("Barron Corp."; together with the Mount Vernon Defendants, "Defendants") for breach of contract, quantum meruit, unjust enrichment, and fraud.

1

Defendants here move to dismiss Plaintiff's breach of contract claim against the Mount Vernon Defendants and fraud claim against all Defendants pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity.[1]

2.

The alleged contract entered into by Barron LLC and Barron Corp. (the "Contract") provided for a purchase price of $1,200,000.00 for the ATM machines to be paid over a term of nine years with interest at 5% per annum.  (See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem.") p. 2; Complaint ¶ 18.)  It is undisputed that the only parties to the Contract were Barron LLC and Barron Corp.[2]  (See Complaint ¶¶ 18-19.) Installment payments on the Contract were made to Barron LLC through November 1, 2004, leaving an unpaid balance of

---

[1] Defendants originally also moved to dismiss Plaintiff's claims for quantum meruit and unjust enrichment, but they abandoned these arguments in their reply brief, indicating that they believe Plaintiff should be permitted to pursue his claims for quantum meruit and unjust enrichment in the alternative to the breach of contract claim at the present time, as the Defendants contest the existence of an enforceable contract.  (See Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss ("Defs.' Reply Mem.") pp. 1-2.)

[2] Defendants, however, have indicated that they intend to dispute the existence of an enforceable contract in their Answer.  (See Defs.' Reply Mem. pp. 1-2.)

the purchase price of the ATMs and associated contracts of $958,398.57.  (Id.)

Plaintiff Kaliner alleges in the Complaint that Barron Corp. was merely a front for the business dealings of the Mount Vernon Defendants (Complaint ¶¶ 15, 51-60), and that MVMM, MVMC and Barron Corp. were all wholly owned and operated by Robert F. Egan (Complaint ¶ 11).  Plaintiff additionally alleges that Barron Corp. did not have its own employees or office space (Complaint ¶¶ 12-13), and did not have any assets between September 19, 2002 and January 31, 2003, when it opened a bank account at JP Morgan Chase Bank on January 31, 2003 with a deposit of $0.01. (Complaint ¶ 15).  According to Plaintiff, each of the payments to Barron LLC pursuant to the Contract was made by wire transfer from MVMC's account at JP Morgan Chase Bank. (Complaint ¶¶ 23-24.)

The Complaint further states that Barron LLC filed a voluntary petition in Bankruptcy subsequent to the June 1, 2004 payment, and that on August 26 and November 11, 2004 Barron Corp. made payments in the amounts of $27,641.41 and $41,462.19 to Plaintiff as Trustee in Bankruptcy for Barron LLC.  (Complaint ¶¶ 24-25.)  According to Plaintiff, no further payments were made to Barron LLC after December 1, 2004, leaving an unpaid balance for the purchase price of

3

the ATMs and associated contracts of $958,398.57. (Complaint ¶¶ 26-27.)

### 3.

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). "In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations." In re Parmalat Sec. Litig., 501 F.Supp.2d 560 (S.D.N.Y. 2007). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

In addition, Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated with particularity. Fed. R. Civ. Proc. 9(b).

"In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir.

1998), cert. denied, 525 U.S. 1103 (1999)). See also ATSI Commc'ns, 493 F.3d at 98 (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (noting that in evaluating a 12(b)(6) motion, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit")).

"The court is not permitted to consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56 and are afforded an opportunity to submit additional affidavits." Campo v. 1st Nationwide Bank, 857 F.Supp. 264, 269 (E.D.N.Y. 1994).[3]

**3(a).**

Defendants first challenge Plaintiff's breach of contract claim with respect to Defendants MVMM and MVMC.

---

[3] The parties have submitted several affidavits with their briefs. (See Declaration of Derek Wolman In Opposition to Defendants' Motion to Dismiss ("Wolman Decl."); Reply Declaration of Karen F. Lederer in Support of Defendants' Motion to Dismiss the Complaint ("Lederer Decl."); Reply Affidavit of Robert F. Egan in Further Support of Defendants' Motion to Dismiss the Complaint ("Egan Decl.").) The Court does not wish at this time to convert Defendants' motion to dismiss into a motion for summary judgment, and so does not consider these supplemental affidavits in evaluating the instant motion.

In order to state a claim for breach of contract under New York law, a plaintiff must allege the existence of a contract, a breach of that contract, and damages resulting from the breach.  See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004).

Ordinarily, for purposes of evaluating a contract claim, a non-party to a contract cannot be bound by the contract.  See Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d Cir. 1985).  An exception to this rule permits a plaintiff to state a claim for breach of contract against a non-signatory to the contract where the plaintiff adequately alleges that the non-signatory was the "alter ego" of one or more of the signatories to the contract. See Campo, 857 F.Supp. at 270.  New York courts have found that if a plaintiff can demonstrate "complete control" by a dominating corporation, the dominating corporation may be found liable for contractual breaches and other wrongs against third parties by way of the "alter ego" theory of liability.  Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991).  See also Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 703 (2d Cir.1990) ("New York law allows the corporate veil to be pierced either when there is fraud

<u>or</u> when the corporation has been used as an alter ego.") (emphasis in original).

Interpreting New York law, the Second Circuit has found it appropriate to pierce the corporate veil or to hold third parties to a contract liable on an alter ego theory[4] when the dominating company has caused a party to a contract to breach a contract for the dominating company's benefit.  <u>See</u>, e.g., <u>Gorrill v. Icelandair/Flugleidir</u>, 761 F.2d 847, 853 (2d Cir. 1985); <u>Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank</u>, 392 F.3d 520, 525 (2d Cir. 2004).  <u>Cf</u>. <u>Walter E. Heller & Co. v. Video Innovations, Inc.</u>, 730 F.2d 50 (2d Cir. 1984) (interpreting the required showings for veil-piercing under New York law to include 1) the absence of corporate formalities; 2) inadequate capitalization; 3) personal use of corporate funds; and 4) perpetuation of fraud through the corporate vehicle.)

"Factors indicating that a parent corporation controls its subsidiary include lack of normal corporate formality in the subsidiary's existence, under-capitalization, and personal use of the subsidiary's funds by the parent...." <u>Am. Protein Corp. v. AB Colbo</u>, 844 F.2d 56 (2d Cir.), <u>cert. denied</u>, 488 U.S. 852 (1988).  In <u>Carte Blanche (Singapore)</u>

---

[4] The tests for piercing the corporate veil and alter ego liability are equivalent under New York law.  <u>See</u> <u>Wm. Passalacqua Builders</u>, 933 F.2d at 138.

Pte., Ltd. v. Diners Club International, Inc., 758 F.Supp. 908 (S.D.N.Y. 1991), the court applied the American Protein factors, and found control and domination by a parent corporation of a subsidiary as a matter of law based on a number of facts analogous to those alleged by Plaintiff in the instant complaint.  In Carte Blanche, the court found evidence of domination by the parent corporation in the following facts: the subsidiary had no employees or officers, other than the officers of the parent corporation; the subsidiary had no assets, and all payments to the subsidiary were deposited into the parent's accounts, with all expenses paid from the parent's accounts; the subsidiary had no separate office from that of the parent; and the subsidiary did not conduct regular board meetings for a period of two years.  Id. at 914.

    With respect to Defendants in the instant case, Plaintiff has alleged that Robert F. Egan is the sole officer and shareholder in Defendants MVMM, MVMC and Barron Corp. (Complaint ¶ 11); that each of the Defendants has maintained their principal places of business at the same location for the relevant period (Complaint ¶ 12); and that during all relevant times all Defendants employed the same personnel (Complaint ¶ 13).  Plaintiff has further alleged that Barron Corp. had no assets between September 19, 2002

8

and January 31, 2003 (Complaint ¶ 15), and that all of the payments made to Barron LLC on the Contract, including three checks and sixteen wire transfers, were made by Defendant MVMC, either directly or through MVMC's account at JP Morgan Chase Bank.  (Complaint ¶¶ 21-23.)

The Complaint also alleges that "[s]ince on or about October 1, 2002 Defendants have exercised ownership, dominion and control over the ATM machines and Contracts that they purchased from Barron LLC."  (Complaint ¶ 20.) According to the Complaint, "the revenues received from the ATM machines purchased from Barron LLC were received by and deposited into the account of MCMV and/or MVMM." (Complaint ¶ 56.)

The facts alleged by Plaintiff Kaliner paint a convincing picture of the type of third-party "control and domination" that exposed the Carte Blanche defendants to liability under the "alter ego" doctrine.  Though Plaintiff does not directly allege in the complaint that Barron Corp. acted as the "alter ego" of Defendants MVMM and MVMC, he provides factual allegations that convincingly portray Barron Corp. as a hollow entity, wholly controlled by MVMM and MVMC or the forces behind them, and indistinguishable from MVMM and MVMC in all but name.

Plaintiff is thereby able to sustain his breach of contract claim against MCMM and MVMC on an "alter ego' theory of liability, and Defendants' motion to dismiss the complaint is DENIED as to the breach of contract claim against MVMM and MVMC.

### 3(b).

Defendants also move to dismiss Plaintiff's fraud claims on the basis of Federal Rule of Civil Procedure 9(b), which requires that plaintiffs state fraud claims with particularity.  Fed. R. Civ. Proc. 9(b).

In order to state a claim for fraud under New York law, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Wall v. CSX Trans., Inc., 471 F.3d 410, 415-416 (2d Cir. 2006), citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996).

"The well accepted rule is that a cause of action [for fraud] does not arise when alleged fraud relates to a breach of contract." Crabtree v. Tristar Auto. Group, Inc., 776 F.Supp. 155 (S.D.N.Y. 1991) (holding that the plaintiff's allegations that defendants planned to purchase

10

Crabtree Automotive and sabotage its recordkeeping in order to defraud plaintiffs failed to state a fraud claim because plaintiffs failed to allege a legal duty existing independently of the parties' contractual relations), citing MBW Adver. Network, Inc. v. Century Bus. Credit Corp., 173 A.D.2d 306, (1st Dep't 1991).  "[A] representation that performance will be made, even if only implied through the negotiation process, is not distinct from the contract."  Id., citing Metropolitan Transp. Auth. V. Triumph Adver. Prods., Inc., 497 N.Y.S.2d 673, 675 (1st Dep't 1986).

"An exception to this rule exists if the promise made was a representation of present fact, not of future intent."  Id., citing Spellman v. Columbia Manicure Mfg. Co., Inc., 111 A.D.2d 329 (2d Dep't 1985).  In other words, for the misrepresentations to form the basis of a fraud claim, they must be "misrepresentations which were collateral or extraneous to the agreements entered into by the parties."  N. Triphammer Dev. Corp. v. Ithaca Assoc., 704 F.Supp. 422, 427 (S.D.N.Y. 1989).

Plaintiff Kaliner bases his fraud claims on the fact that Barron Corp. was never adequately capitalized and at the time of the offer to contract with Barron LLC for the purchase of ATM machines, Barron Corp. did not have assets

11

sufficient to pay the contract price.  (See Pl.'s Mem p. 6; Complaint ¶ 51.)  The Complaint alleges that "Barron Corp. was sub defuse [sic] set up by MVMM and MVMC in an attempt to insulate them from liability for the purchase price of the ATM machines and Contracts while they received the revenues and benefits."  (Complaint ¶ 65.)

    Plaintiff cites Deerfield Communications Corporation v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954 (1986), for the proposition that "[a] promise made with a preconceived and undisclosed intention of not performing it, constitutes a misrepresentation for purposes of fraud."  (Pl.'s Mem. p. 10.)  Plaintiff's assertion mischaracterizes the Deerfield Court's holding.  In Deerfield, the New York Court of Appeals, in holding that the trial court properly denied plaintiff's motion to dismiss a claim for fraud in the inducement, emphasized that they key consideration was the fact that the fraud claim was predicated on allegations of a "present fact collateral to" the contract that was the "inducement for the contract" and not "a mere promissory statement as to what would be done in the future ...."  Deerfield Commc'ns., 68 N.Y.2d at 956.  A simple promise of performance on a contract, therefore, regardless of the intentions of the party making the promise, is insufficient as a predicate for a fraud claim.

12

In the instant case, despite the fact that Plaintiff argues in his brief that "Defendants ... made a material false misrepresentation by promising that Barron Corp. was adequately capitalized to purchase the ATMs" (Pl.'s Mem. p. 11), the Complaint fails to allege that any Defendant made a specific representation to the effect that Barron Corp. was adequately capitalized or had sufficient assets to cover the contract amount. The only specific representations by Defendants alleged in the Complaint are the contents of Defendants' offer, in which they "offered to purchase Barron LLC's ATM machines and Contracts ... for an agreed purchase price of $1,200,000 to be paid over a term of nine (9) years with interest at 5% per annum payable in equal monthly installments of $13,820.73 ...." (Complaint ¶ 18.) This offer, if read as a promise of performance, constitutes a "promissory statement as to what would be done in the future" and not a present fact collateral to the contract. It cannot therefore serve as the basis of a fraud claim, as a fraud claim premised on a promise of future performance of a contractual obligation would be duplicative of the breach of contract claim. See Deerfield Commc'ns., 68 N.Y.2d at 956.

Plaintiff has failed to allege a "material false representation" by Defendants that can form the basis of a

13

fraud claim; Defendants' Motion to Dismiss is therefore GRANTED with respect to Plaintiff's fraud claim.

**4.**

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED as to Plaintiff's breach of contract claims against Defendants MVMM and MVMC, and GRANTED as to Plaintiff's fraud claim.

SO ORDERED.

Dated: September 3, 2008

                                          Lawrence M. McKenna
                                               U.S.D.J.